## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DAVID BOWEN,<br><br>                           Plaintiff,<br><br>                    v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, and CAPITAL ONE, N.A.,<br><br>                           Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff David Bowen ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against defendant Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("TransUnion"), and Capital One, N.A. ("Capital One") (all collectively, "Defendants"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

### PRELIMINARY STATEMENT

1.       This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2.       Defendants have reported and continue to report inaccurate information concerning Plaintiff's credit history, namely, that Plaintiff is deceased and/or that Plaintiff has no credit score.

3.    Although Plaintiff disputed the false reporting through the FCRA compliance divisions maintained by Equifax, and Equifax, in turn, notified Capital One of Plaintiff's dispute, Equifax and Capital One have refused to correct and/or fully suppress the inaccurate reporting.

4.    In addition, Equifax has failed to accurately report the status of a debt account that was discharged in Plaintiff's Chapter 7 bankruptcy proceedings.

5.    As discussed below, such reporting has harmed and continues to harm Plaintiff.

## PARTIES

6.    Plaintiff is a natural person that resides in Osceola County, Florida and qualifies as a "consumer" as defined and protected by the FCRA.

7.    Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f).  Equifax is authorized to do business in this state, regularly conducts business in this judicial district, and maintains its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

8.    Defendant TransUnion is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f).  TransUnion is authorized to do business in the State of North Carolina, regularly conducts business in this judicial district, and

maintains its principal place of business is located at 555 West Adams, Chicago, Illinois 60661. TransUnion can be served through its registered agent, Prentice Hall Corporation, at 801 Adlai Stevenson Drive, Springfield, IL 62703.

9.      Defendant Capital One is a financial institution headquartered in Virginia that qualifies as a "furnisher" of credit information under the FCRA. Capital One is authorized to do business in this state, regularly conducts business in this judicial district, and maintains its principal place of business at 1680 Capital One Drive, Mc Lean, VA, 22102. Capital One can be served through its registered agent, Corporation Service Company, at 100 Shockoe Slip Fl 2, Richmond, VA 23219.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

11.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred in this district.

## STATEMENT OF FACTS

12.      The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and

accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

13.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

14.     In addition, credit bureaus must immediately notify furnishers if a consumer disputes the accuracy of information reported by that furnisher. Section 1681s-2(b) requires a furnisher, upon receiving a consumer's dispute, to conduct a reasonable investigation, mark the account as disputed, and update the reporting if necessary.

15.     The FCRA provides consumers with a private right of action against consumer reporting agencies and furnishers that willfully or negligently fail to comply with their statutory obligations.

16.     On or about June 30, 2021, Plaintiff filed a "no asset" chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida.

17.     After filing for bankruptcy, on or about July 13, 2021, Plaintiff entered into a reaffirmation agreement with Navy Federal Credit Union, thereby reaffirming an auto loan account issued by Navy Federal Credit Union which remained open and active.

18.     Aside from the Navy Federal Credit Union account, all of Plaintiff's then-current credit accounts were subject to Plaintiff's bankruptcy filing and were subsequently discharged pursuant to an Order of Discharge entered by the Bankruptcy Court on or about October 13, 2021.

19.     On the basis of this Order of Discharge, Plaintiff was not personally liable for the dischargeable debt accounts, and all such accounts should have carried zero-dollar balances.

20.     These discharged accounts included a Bass Pro credit account issued by Capital One (the "Capital One Account").

21.     Plaintiff, a United States military veteran, suffers from a service-connected disability and depends on benefit payments and medical care issued by the U.S. Department of Veteran Affairs (the "VA").

22.     In or around June of 2021, the VA suddenly withheld Plaintiff's disability payment without notice.

23.     Plaintiff contacted the VA financial benefits department to determine why they withheld Plaintiff's disability payment.

24.    The VA financial benefits department informed Plaintiff that their records mistakenly reflected that Plaintiff was deceased.

25.    The VA financial benefits department then informed Plaintiff that Plaintiff's verbal confirmation that he was not deceased, along with a change of address form to update Plaintiff's address, was sufficient to process a correction of the VA's records to properly reflect that Plaintiff was still alive.

26.    Plaintiff submitted his verbal confirmation and a change of address form, and the VA financial benefits department reinitiated Plaintiff's disability payments.

27.    On or about November 27, 2021, Plaintiff was feeling ill and went to the VA-run emergency room for urgent care.

28.    Plaintiff noticed that the receptionist was having trouble checking Plaintiff in.

29.    Plaintiff asked if the problem was related to their records reflecting that Plaintiff was deceased, and the receptionist confirmed that it was.

30.    Plaintiff learned that, while the VA financial benefits department corrected their internal records to correctly reflect that Plaintiff was not deceased, the VA medical department had not corrected their internal records.

31.    The receptionist informed Plaintiff that they would treat him and correct their records.

32.    Plaintiff had thought the deceased reporting was limited to the VA's records and was resolved.

33.    At the end of the year 2021, Plaintiff began to experience ongoing mechanical issues with his truck that he relied on for transportation for himself and his two daughters.

34.    The mechanical issues worsened, and Plaintiff realized he needed to obtain financing and replace his truck.

35.    Plaintiff saw this circumstance as an opportunity to strengthen and rebuild his credit after his bankruptcy filing.

36.    On or about January 22, 2022, Plaintiff visited the Regal Honda car dealership in Lakeland, Florida in order to obtain financing and purchase a truck.

37.    Plaintiff met his mother at the dealership in case he needed her to co-sign on the auto loan.

38.    Unfortunately, after running Plaintiff's credit, Honda's lender(s) (which, upon information and belief, was Flagship Credit Acceptance and/or PenFed Credit Union) advised the Honda representative, who, in turn advised Plaintiff, that they would be unable to provide financing to Plaintiff in his name.

39.    The Honda representative then advised Plaintiff that if his mother were to co-sign on the loan, they could potentially issue the loan in Plaintiff's name but would need to charge Plaintiff an additional $200 to $300 per month.

40.    The Honda representative was initially vague as to why Plaintiff was subject to these loan terms, and only advised that "something didn't look right" on Plaintiff's credit.

41.    The Honda representative then handed Plaintiff a printout that demonstrated that Equifax reported to Honda and/or the lender(s) working in conjunction with Honda that Plaintiff had a credit score of -1.

42.    The Honda representative advised Plaintiff to call Equifax, and, while Plaintiff was still at the dealership, Plaintiff called Equifax.

43.    During Plaintiff's January 22, 2022 call to Equifax, the Equifax representative advised Plaintiff that Capital One was furnishing the tradeline relating to the Capital One Account (the "Capital One Tradeline") with a notation indicating that Plaintiff was deceased, and that Equifax was in turn reporting that information.

44.    Upon hearing this, Plaintiff disputed Equifax's inaccurate reporting of the Capital One Tradeline, as he was clearly alive.

45.    Plaintiff then hung up to deal with the Honda representative.

46.    The Honda representative then acknowledged that Plaintiff was being reported as deceased and called Honda's lender(s) to ask if they could waive and/or ignore the deceased reporting in order to offer Plaintiff financing at a reasonable rate, as Plaintiff was clearly alive.

47.    The Honda representative then advised Plaintiff that their lender(s) could not waive and/or ignore the deceased reporting, that the initial verbal offer of having Plaintiff's mother co-sign with an additional $200 to $300 increase was no longer possible, and that Plaintiff could simply not be included on the loan if the loan was to be issued.

48.    Plaintiff was extremely disappointed that he could not obtain the loan in his name or as a co-signor, as he had been depending on the auto loan being issued in his name in order to build and strengthen his credit.

49.    Nevertheless, Plaintiff needed the truck to transport himself and his two daughters.

50.    Accordingly, Plaintiff had to agree to his mother obtaining the financing and purchasing the truck in her name only.

51.    Noticing that Plaintiff intended to use the benefit of the auto loan to build and strengthen his credit, the Honda representative advised Plaintiff to apply for a secured credit card.

52.    Further, on or about January 22, 2022, Plaintiff received an adverse action letter from PenFed Credit Union stating that his credit request submitted by the dealership on January 22, 2022 was denied, stated that PenFed Credit Union's decision was based on Equifax's reporting, and further stated that "specific credit report details are unavailable.  For more information please contact [Equifax]."

53.    On or about January 22, 2022, Plaintiff applied for a secured credit card from Discover.

54.    By a letter dated January 23, 2022, Discover advised Plaintiff that his application was denied because that his identity couldn't be verified by way of his credit.

55.    Meanwhile, by a letter dated January 22, 2022, Equifax confirmed that it had completed its reinvestigation of Plaintiff's dispute and indicated that it would continue reporting the deceased notation on the Capital One Tradeline.

56.    In addition, on January 24, 2022, Equifax again reported the Capital One Tradeline with a notation reflecting that Plaintiff was deceased.

57.    Equifax's January 24, 2022 reporting demonstrates that Equifax was also failing to report a credit score concerning Plaintiff.

58.    Further, Equifax's January 24, 2022 reporting demonstrated that Equifax was reporting the Capital One Tradeline as a charged off account carrying a $2,289 balance without reporting that the debt underlying the Capital One Account was discharged in bankruptcy.

59.    Plaintiff also reviewed Equifax's reporting issued on or about September 2, 2021 and found that Equifax was already reporting the inaccurate information as of September 2, 2021.

60.     Specifically, Equifax's September 2, 2021 reporting demonstrated that, as of September 2, 2021, (i) Equifax was reporting the Capital One Tradeline with a notation reflecting that Plaintiff was deceased, and (ii) Equifax was not reporting a credit score concerning Plaintiff.

61.     Likewise, Equifax's reporting on or about February 1, 2022 demonstrates that (i) Equifax was still reporting the Capital One Tradeline with a notation reflecting that Plaintiff was deceased, (ii) Equifax was still not reporting a credit score concerning Plaintiff, and (iii) Equifax was still reporting the Capital One Tradeline as a charged off account carrying a $2,289 balance without reporting that the debt underlying the Capital One Account was discharged in bankruptcy.

62.     Equifax also reported record of Plaintiff's bankruptcy (including the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged) on September 2, 2021, January 24, 2022, and February 1, 2022.

63.     In addition, Equifax reported the tradeline related to the Navy Federal Credit Union that was subject to Plaintiff's reaffirmation agreement as open, current, and carrying an active balance, as well as with a notation stating "[r]eaffirmation of debt" on September 2, 2021, January 24, 2022, and February 1, 2022.

64.     Upon information and belief, Equifax's reporting of the deceased notation and Equifax's failure to properly report Plaintiff's credit score, as alleged

herein, is a direct result of information the Capital One furnished to Equifax concerning Plaintiff.

65.    Upon information and belief, Equifax notified Capital One of Plaintiff's dispute, as required by the FCRA.

66.    Nevertheless, as was the case with Equifax, Capital One failed to conduct a reasonable investigation of Plaintiff's dispute and failed to correct the disputed reporting.

67.    On or about January 22, 2022, Plaintiff received a letter from Capital One dated January 22, 2022.

68.    The January 22, 2022 Capital One letter indicated that Capital One had cancelled the debt related to Plaintiff's Capital One account.

69.    Upon information and belief, Capital One sent the January 22, 2022 Capital One letter because they continued to act in accordance with their internal records that reflected Plaintiff was deceased, and thus cancelled the underlying account and/or debt.

70.    In addition to Equifax, TransUnion has also been improperly reporting Plaintiff's credit information.

71.    After Plaintiff learned that Equifax had reported to Honda that Plaintiff was deceased and had no credit score, on or about January 23, 2022, Plaintiff attempted to access his TransUnion consumer report via annualcreditreport.com.

72.     However, despite following the instructions provided on annualcreditreport.com, Plaintiff was unable to access his TransUnion consumer report.

73.     On or about the same day he attempted to access his TransUnion consumer report via annualcreditreport.com, Plaintiff accessed his Credit Karma account and found that TransUnion had not updated his credit score or credit information to Credit Karma since June or July of 2021.

74.     Upon information and belief, Plaintiff was unable to obtain his consumer reports and/or credit score from TransUnion because TransUnion had reported that Plaintiff was deceased and/or unilaterally froze Plaintiff's credit file.

75.     On or about February 1, 2022, Plaintiff was finally able to access his TransUnion consumer reporting.

76.     TransUnion's February 1, 2022 reporting demonstrates that while TransUnion is no longer reporting Plaintiff as deceased, TransUnion reported a Flagship Credit Acceptance hard inquiry dated January 22, 2022.

77.     The January 22, 2022 Flagship Credit Acceptance hard inquiry directly corresponded with the date on which Plaintiff had applied for a loan in the Honda dealership but was denied.

78.    Accordingly, upon information and belief, TransUnion reported to Flagship Credit Acceptance that Plaintiff was deceased and/or failed to report Plaintiff's credit score to Flagship Credit Acceptance.

79.    Further, TransUnion's February 1, 2022 reporting reported the tradeline related to the Navy Federal Credit Union subject to Plaintiff's reaffirmation agreement as open, current, and carrying an active balance, as well as with a notation stating "[r]eaffirmation of debt."

80.    Finally, TransUnion's February 1, 2022 reporting reported record of Plaintiff's bankruptcy in the Public Records section, and included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

81.    Equifax and Capital One had actual notice that Plaintiff is not deceased by way of Plaintiff's dispute.

82.    Further, Equifax and Capital One had constructive notice that Plaintiff was not deceased, as Equifax and Capital One knew or should have known that deceased people do not dispute information on a consumer report.

83.    In addition, Equifax and TransUnion had constructive notice that Plaintiff is not deceased, as Equifax and TransUnion knew or should have known that deceased persons do not file for bankruptcy, enter into reaffirmation agreements

to reaffirm debts otherwise dischargeable in bankruptcy, incur credit inquiries, or have active updates to their reaffirmed credit accounts.

84.    Defendants have no legitimate basis for failing to comply with their statutory obligation to investigate and permanently correct the objectively false information they were reporting about Plaintiff.

85.    Upon information and belief, Defendants did not access any information from the Social Security Administration in order to verify whether Plaintiff was actually deceased.

86.    Moreover, although Equifax and TransUnion reported that Plaintiff was deceased, they continued to sell consumer reports concerning Plaintiff to third-parties.

87.    Finally, Equifax reported and continues to report the Capital One Tradeline as a charged off account carrying a $2,289 balance without reporting that the debt underlying the Capital One Account was discharged in bankruptcy, despite also (i) reporting the account with an open date that precedes the date that Plaintiff filed for bankruptcy, (ii) reporting record of Plaintiff's bankruptcy, including the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged; and (iii) reporting all of Plaintiff's other tradelines related to credit accounts opened prior to date that Plaintiff filed for bankruptcy as closed with a zero balance and/or discharged in bankruptcy.

88.    Upon information or belief, Plaintiff would have been more likely to have been approved for the loans for which he had been denied, as alleged herein, but for the inaccurate reporting on the part of Defendants.

89.    Accordingly, Defendants' violations of the FCRA have harmed Plaintiff financially, as Plaintiff, who is a disabled veteran who had to file bankruptcy and was forced to borrow and repay loans from friends and family, would greatly benefit from the ability to properly strengthen and rebuild his credit for purposes of further benefitting from extensions of credit in the future.

90.    Moreover, Plaintiff has suffered significant emotional distress as a result of Defendants' violations.

91.    Plaintiff, a single father of two children, has been greatly distressed by his inability to resolve the issue and clear his credit reporting of inaccurate information, as well as the resulting obstacles preventing Plaintiff from rebuilding and strengthening his credit to secure a financially stable future for himself and his children.

92.    The circumstances created by Defendants' FCRA violations have further distressed Plaintiff to the extent that he has suffered from disrupted sleep, as Plaintiff is kept awake by concerns that the issue will not be remedied despite his best efforts and may very well be affecting other aspects of his life of which he is unaware.

93.    Further, Plaintiff had missed a child support payment when the VA had initially reported Plaintiff as deceased, which Plaintiff had never done before.

94.    This missed child support payment weighed heavily on Plaintiff, and Plaintiff was constantly reminded of this fact every time Plaintiff had to deal with Defendants' inaccurate reporting or the effects thereof.

95.    On or about January 27, 2022, Plaintiff had to visit the offices of the VA medical department to ensure that the VA had fully corrected their internal records to reflect that Plaintiff was still alive.

96.    During this visit, the VA representative refused to provide Plaintiff with paperwork confirming the VA had fully corrected their internal records to reflect that Plaintiff was still alive and said that Plaintiff would have to return and/or call on a later date.

97.    This triggered the emotional distress and frustration caused by Defendants' reporting and the effects thereof to overwhelm Plaintiff in a rush of emotion, and, against Plaintiff's better judgment, Plaintiff reacted in an emotional manner by crying publicly and swearing at the representative.

98.    The emotional response was so overwhelming that the VA representative had to call four police officers and three behavioral health specialists to attend to Plaintiff.

99.    This incident was extremely distressful and embarrassing to Plaintiff, so much so that Plaintiff, who is a grown man trained by the military to maintain composure, considers it one of the worst experiences of his life.

100.    Defendants' violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

101.    Alternatively, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

102.    In any event, each of the Defendants are individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I
### Against Equifax and TransUnion
### for Violations of the FCRA, 15 U.S.C. §§1681e

103.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

104.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of credit reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

105.   Upon receiving a consumer's dispute, consumer reporting agencies are legally required to conduct a reasonable investigation and correct the disputed information contained in the report, as follows:

> . . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.* §1681i(a)(1).

106.   Consumer reporting agencies are further required to provide prompt notice of the consumer's dispute to the furnisher of the disputed information, as follows:

> (A) *In general.* ***Before the expiration of the 5-business-day period*** beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), ***the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person***. The notice shall include all relevant

> information regarding the dispute that the agency has received from the consumer or reseller.

*Id.* §1681i(a)(1) (emphasis added).

107.  Consumer reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….

*Id.* §1681i(a)(5)(C).

108.  Equifax and TransUnion violated § 1681e(b) because they failed to follow reasonable procedures to ensure maximum possible accuracy of the information they reported concerning Plaintiff.

109.  Specifically, Equifax and TransUnion violated § 1681e(b) by repeatedly reporting that Plaintiff was "deceased" and/or that Plaintiff had no credit score, all without verifying the accuracy of that information.

110.  Moreover, Equifax and TransUnion violated § 1681e(b) by failing to maintain procedures that prevented them from marking Plaintiff as "deceased" while simultaneously selling Plaintiff's information to third parties and reporting ongoing credit transactions.

111.    Further, Equifax violated § 1681e(b) by reporting the Capital One Tradeline as a charged off account carrying a $2,289 balance without reporting that the debt underlying the Capital One Account was discharged in bankruptcy with an open date that precedes the date that Plaintiff filed for bankruptcy, despite also (i) reporting a detailed record of Plaintiff's bankruptcy; and (ii) reporting all of Plaintiff's other tradelines related to credit accounts opened prior to date that Plaintiff filed for bankruptcy as closed with a zero balance and/or discharged in bankruptcy.

112.    The violations on the part of Equifax and TransUnion were a direct and proximate cause of Plaintiff's injuries, as alleged herein, and Equifax and TransUnion are therefore liable to Plaintiff for their negligent and/or willful failures to follow reasonable policies and procedures.

113.    As a result of the violations of 15 U.S.C. §§ 1681e(b) committed by Equifax and TransUnion, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
## Against Equifax for Violations of the FCRA, 15 U.S.C. §§ 1681i

114.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

115.   Upon receiving a consumer's dispute, consumer reporting agencies are legally required to conduct a reasonable investigation and correct the disputed information, as follows:

> .  .  . *if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information*, *or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. Id. §1681i(a)(1) (emphasis added).

116.   Consumer reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….

*Id*. §1681i(a)(5)(C).

117.   Equifax violated § 1681(i) on one or more occasions, as Plaintiff disputed the inaccurate information that reflected he was deceased and/or had no credit score, and still, Equifax willfully, intentionally, recklessly, and/or negligently

failed to perform a reasonable reinvestigation and remove the inaccurate information.

118.  Moreover, Equifax also violated 1681(i) on one or more occasions, as it willfully, intentionally, recklessly, and/or negligently failed to maintain reasonable procedures to prevent the reappearance of the inaccurate information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

119.  The violations of 15 U.S.C. § 1681i committed by Equifax were a direct and proximate cause of Plaintiff's injuries, as alleged herein, and Equifax is therefore liable to Plaintiff for its negligent and willful failures to follow reasonable policies and procedures.

120.  As a result of the violations of 15 U.S.C. § 1681i committed by Equifax, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## COUNT III

**Against Capital One for Violations of the FCRA, 15 U.S.C. § 1681s-2(b)**

121.  Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

122.  Upon receiving notice of a dispute from a credit reporting agency, furnishers are required to conduct a reasonable investigation and correct the inaccurate information, as follows:

After receiving notice pursuant to 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –

(A)    conduct an investigation with respect to disputed information;

(B)    review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of this title;

(C)    report the results of the investigation to the consumer reporting agency; [and]

(D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information…

15 U.S.C. § 1681s-2(b).

123.   Capital One willfully, intentionally, recklessly, and/or negligently failed to conduct a timely and reasonable investigation of Plaintiff's dispute after receiving notice thereof from Equifax.

124.   Capital One has further willfully, intentionally, recklessly, and/or negligently continued to report the disputed and inaccurate information to Equifax.

125.   Instead of reporting to Equifax that the information was in fact inaccurate, Capital One improperly and summarily verified that the reporting was accurate and continued to report it to Equifax.

126.   As a result of Capital One's misconduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to credit reputation and credit score and emotional distress, as alleged herein.

127.   Capital One's conduct was a direct and proximate cause of Plaintiff's damages, as alleged herein.

128.   Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a judgment:

i.   Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii.   Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii.   Awarding such other relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 4, 2022

THE CONSUMER JUSTICE LAW FIRM

/s/ Yosef Steinmetz
Yosef Steinmetz
Bar No. 119968
8245 N. 85th Way
Scottsdale, AZ 85258
T: (305) 330-3750
ysteinmetz@cjl.law

Attorney for Plaintiff